IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO.  3:10cv869-CSC |
| | ) | (WO) |
| TITLE2LAND, LLC, a Louisiana limited liability company, and TITLE2LAND, LLC, an Alabama limited liability company, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

On September 10, 2010, plaintiff First American Title Insurance Company filed suit in the Chambers County Circuit Court asserting a breach of contract claim against defendants Title2Land, LLC, a Louisiana limited liability company, and Title2Land, LLC, an Alabama limited liability company.

First American Title Insurance Company ("First American") is a California corporation with its principal place of business in Florida.   Title2Land, LLC, a Louisiana limited liability company, is a Louisiana company with its principal place of business in Louisiana and Title2Land, LLC, an Alabama limited liability company, is an Alabama company with its principal place of business in Louisiana.[1]   The plaintiff's allegations in this

---

[1] Lane Bennett is the sole member of both Title2Land companies, and his residence is Louisiana. Thus, the defendants are correct that they are citizens of Louisiana for the purpose of determining jurisdiction. *See Carden v. Arkoma Associates,* 494 U.S. 185 (1990).

lawsuit stem from a national agency agreement in which the defendants agreed to act as agents to solicit applications for title insurance, collect premiums, and issue and countersign title insurance policies for First American.  The plaintiff asserts that the defendants breached the agreement by discovering a bankruptcy order but subsequently determining that the judicial lien should not be included as an exception to the title policy issued by First American on real property in Chambers County, Alabama.

On October 14, 2010, the defendants removed the case to this court pursuant to the court's diversity jurisdiction under 28 U.S.C. § 1332.  Pursuant to the provisions of 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

On October 29, 2010, the defendants filed a 28 U.S.C. § 1404 motion to transfer venue from the United States District Court for the Middle District of Alabama to the United States District Court for the Middle District of Louisiana.  (Doc. No. 7.)  On November 16, 2010, the plaintiff submitted a response in opposition to the motion to change venue.  (Doc. No. 10.)  On December 2, 2010, the defendants filed a reply in opposition to the motion. (Doc. No. 15.)  On December 15, 2010, this court held oral argument on the motion.  (Doc. No. 17.)  On January 11, 2011, the plaintiff filed an additional response.  (Doc. No. 23.) Upon consideration of the motion to transfer, the parties' responses and evidentiary materials, and the arguments of counsel, the court concludes that the motion to transfer this case to the Middle District of Louisiana is due to be granted.

## II. DISCUSSION

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to a district where it could have been brought for the convenience of the parties; the convenience of the witnesses; and the interests of justice.  The decision to transfer a case is within the discretion of the trial court with the propriety of transfer being decided based on the facts of each individual case.  *See Brown v. Connecticut General Life Ins. Co.*, 934 F.2d 1193, 1196 (11th Cir. 1991); *Hutchens v. Bill Heard Chevrolet Co.*, 928 F. Supp. 1089, 1090 (M.D. Ala. 1996).  Under § 1404(a), a district court should not transfer a case unless "the movant can show that [the plaintiff's choice of forum] is clearly outweighed by other considerations." *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981).[2]  *See also, Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996); *Gould v. Nat'l Life Ins. Co.*, 990 F. Supp. 1354, 1357 (M.D. Ala. 1998).

Section 1404 factors include:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with governing law; (8) the weight accorded to a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

### A.  An Adequate Alternative Forum

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

When jurisdiction is based on diversity of citizenship, as the case is here, venue is proper in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(a)(1). In this case, several events occurred in both Alabama and Louisiana.

In May 2002, the defendants entered into an agency agreement, in which both Title2Land, LLC, a Louisiana limited liability company, and Title2Land, LLC, an Alabama limited liability company agreed to act as agents for First American. The agreement was signed by both Lane Bennet and Shirley Sparks, members of Title2Land, and Kenneth R. Jannen, the vice president of First American. The court is unable to discern where the parties signed the contract.

The defendants, as agents for First American, subsequently performed title work on real property located at 26220 Veterans Memorial Parkway in Camp Hill, Alabama. According to First American, the defendants erred when determining that an order issued by a bankruptcy court in the Middle District of Alabama was inapplicable to the exceptions of the title insurance policy. The defendants allege that several of its employees performed title work, including consideration of the effect of the judicial lien, as well as prepared closing documents on the real property while in their office in Louisiana. As a result of the judicial lien on the property, First American was caused to defend Philander Morgan, the purchaser of the Chambers County property and a resident of Alabama, as well as his lender, Wilmington Finance, against a declaration filed by a creditor in the Chambers County Circuit

4

Court.  The case was subsequently settled.  First American now seeks to enforce an indemnity provision in the agency agreement, arguing that the defendants breached the contract by failing to recognize the judicial lien as an encumbrance on the property. Thus, a substantial part of the events or omissions giving rise to the breach-of-contract claim occurred both in Alabama and Louisiana.  Moreover, the parties do not dispute that this case could have been brought in the Middle District of Louisiana.  This court therefore concludes that this lawsuit could have originally been brought in the Middle District of Louisiana.

### B.  Factor Analysis

### (1)  Convenience of Witnesses

The defendants' witnesses in this case will be current and former employees from Title2Land.  The defendants assert that they plan on calling Lane Bennett, a member of Title2Land, and Annette Stanhope, a current employee, as witnesses. In addition, Title2Land expects to call two former employees who performed title work on the judicial lien and one former employee who participated in the closing of the loan.  The complaint filed in state court alleges that "Title2Land did not carefully and prudently consider the effect of the bankruptcy court's order . . . [and] negligently[3] and imprudently assumed that the effect of the bankruptcy court's August 7, 2006 or was to avoid the lien of the judgment in its entirety."  First American characterizes this as "the error that led to the issuance of the title

_____

[3]Notwithstanding the use of the term "negligently," the complaint alleges only a breach of contract.

5

insurance policy without making an exception for the judgment."

The plaintiff expects to call Braxton Wagnon, an assistant vice president of First American, as well as two of its lawyers who defended the purchaser and lender in the Chambers County Circuit Court. The Title2Land employees and former employees live in Louisiana; the plaintiff's witnesses are residents of Birmingham, Alabama.

Title2Land argues that its former employees are principal witnesses and cannot be compelled by this court to attend trial in the Middle District of Alabama.  Significantly, the non-parties in this case reside in Louisiana.  Other than the plaintiff's forum choice, a factor which is discussed below, the most important factor is the convenience of witnesses.  *See Owens v. Blue Tee Corp.*, 177 F.R.D. 673, 679 (M.D. Ala. 1998).  Furthermore,"'[t]he convenience of non-party witnesses is important, if not the most important, factor in determining whether a motion for transfer should be granted.'" *Conseal International Inc. v. Econalytic Systems, Inc.*, No. 09-60477-CIV, 2009 WL 1285865 (S.D. Fla. 2009) (discussing transfer under § 1404(a)).  First American alleges that Title2Land breached the terms of the agency agreement by misconstruing the effect of a bankruptcy order and failing to include the judicial lien as a reference when issuing the policy.  As reflected by the allegations of the complaint, the former Title2Land employees are certainly material to this case, and it would clearly be much more convenient for them to appear in Louisiana than in Alabama.

First American asserts that it intends to call two non-party witnesses, specifically the lawyers from Birmingham, Alabama, to testify concerning the plaintiff's failure to mitigate

damages during the Chambers County Circuit Court case. Although somewhat inconvenient, the plaintiff does not contend that its lawyers will be unable or will resist traveling to Louisiana. Therefore, although this factor provides some support against transfer, there is no indication that it is a significant factor. It is far more likely that the non-party witnesses who are no longer employed by Title2Land would resist testifying as defense witnesses in the Middle District of Alabama. Thus, this factor weighs heavily in the defendants' favor.[4]

### (2)   Location of Relevant Documents and Sources of Proof

Few documents or other evidentiary materials related to the breach-of-contract claim against the defendants in this case are in this district. With the exception of the bankruptcy order, there are no relevant documents or any other significant evidence located here. The bulk of documentary evidence is either in Louisiana with the defendants or in Birmingham, Alabama with the plaintiff's attorneys. All of the evidence, obviously, could be made available in either forum. "[I]n this current era of technology, document production is not as onerous as it once was, and scores of file boxes filled with paper (if they exist) need not travel across the country." *Conseal International Inc.*, *supra*. Thus, the location of relevant documents is not a significant factor in this case.

---

[4] To the extent the plaintiffs argue that their own lawyers in the instant action would be inconvenienced by traveling from Alabama to Louisiana, the court concludes that this factor does not weigh heavily against transfer. *See Nolte v. BellSouth Telecomms., Inc*., No. Civ. A. 3:07cv782IP, 2007 WL 2253561, *3 (N.D. Ala. 2007).

7

**(3)      Convenience of the parties**

Title2Land's office is located in Baton Rouge and Lane Bennet, the sole member of Title2Land, is a resident of Louisiana. Title2Land, LLC, however, is incorporated in Montgomery, Alabama.  First American is a California Corporation with its principal place of business in Florida.  Thus, the balance of convenience to the parties is relatively the same.

**(4)      Locus of Operative Facts**

The plaintiffs argue that the majority of facts occurred in this district because the real property is located in Chambers County, Alabama, the closing occurred in Lee County, Alabama, and the bankruptcy order was discovered in the Middle District of Alabama.[5]  The plaintiffs also argue that they were caused to defend the purchaser and lender in the Chambers County Circuit Court as the result of the defendants' error.  The defendants, however, argue that the operative facts in this breach-of-contract case occurred in the Middle District of Louisiana because the parties entered into the agency agreement in Louisiana.[6]  Title2Land also argues that its employees considered the effect of the judicial lien and prepared the closing documents with respect to the Chambers County property in its office

---

[5] The court notes that a title research company initially discovered the bankruptcy order, which was subsequently provided to Title2Land.

[6] The court is unable to discern at this stage of the proceedings where the parties entered into the agency agreement.  Nonetheless, it is clear to this court that the parties did not sign the agency agreement in the Middle District of Alabama.

8

in Baton Rouge, Louisiana.[7]  Thus, the facts related to the breach of contract claim in this case occurred both in Louisiana and Alabama.  The locus of operative facts does not weigh in favor of either forum.

### (5)  Availability of Process to Compel Unwilling Witnesses

The non-party witnesses in this case, former Title2Land employees, cannot be compelled by this court to appear in the Middle District of Alabama, as discussed above, their testimony will be important.  Pursuant to the Federal Rules of Civil Procedure, a subpoena may be quashed when it requires "a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial."  FED.R.CIV.P. 45(c)(3)(B)(iii).  As previously discussed, it is unlikely that former Title2Land employees would willingly travel to Montgomery, Alabama to testify in this case.  However, the former employees would be subject to compulsory attendance in the Middle District of Louisiana.  This factor weighs heavily in favor of transfer.

### (6)  Relative Means of the Parties

The pleadings and evidentiary materials indicate that both First American and Title2Land conduct business throughout the United States.  It is undisputed that First American has numerous employees with several offices throughout the nation and that

---

[7] The HUD-1 settlement statement indicates that Title2Land was the settlement agent and that the place of settlement is 11851 Wentling Avenue, Ste. A, Baton Rouge, Louisiana 70816.  (Doc. No. 10-2, Pl's Ex. 2.)

Title2Land has no more than 13 employees and one office in Louisiana.  Both companies, however, conduct business in Alabama and Louisiana.  First American is a larger company and therefore may have more financial resources.  Nonetheless, both companies conduct business in Alabama and Louisiana.  Thus, the court concludes that this factor only slightly favors transfer.

### (7)    A Forum's Familiarity with Governing Law

The parties disagree on which state's law controls.  First American argues that Alabama law applies, while the defendants contend that either Louisiana or Florida law is applicable.  An ambiguous choice of law provision is included in the agency agreement.  Paragraph 25 of the agreement provides, "This agreement shall be governed by and construed and enforced in accordance with the laws of Territory."  (Doc. No. 10, Pl's Ex. 11.) Although "territory" is not specifically defined, paragraph 1 provides:

> Subject to the conditions and limitations contained herein, COMPANY hereby designates and appoints AGENT as its representative or agent to solicit applications for title insurance, collect premiums and issue and countersign title insurance policies, binders, commitments to insure and endorsements (hereinafter collectively terms "Policies", each a "Policy"), in the designated geographical area (hereinafter termed "Territory") as set forth in SCHEDULE "I" attached hereto and made a part hereof.

> Unless otherwise expressly set forth in SCHEDULE "I", and only to the extent expressed therein, AGENT shall be a non-exclusive agent within the Territory, and COMPANY shall not be restricted, in any way, from engaging in the business of title insurance, including without limitation, the solicitation of title insurance applications and the appointment of additional agents, within the Territory.  This Agreement will not be effective until AGENT has become licensed pursuant to the laws of Territory as set forth in SCHEDULE "I" and

10

will be limited to such period as AGENT'S license remains in effect.

(*Id.*)  Schedule I lists Alabama, Louisiana, and Mississippi as separate territories.  (*Id.*)

At this stage of the proceedings, there is no parol evidence indicating the intent of the parties.  Because the real property on which the title insurance policy was issued is located "in the geographical area" of Alabama, it is arguable that the parties intended for Alabama law to apply.  Moreover, Alabama law provides that one issuing a title insurance policy on real property in this state must be domiciled or organized here.  Ala. Code § 27-25-4(a).  Thus, it is more likely that Title2Land, LLC, an Alabama limited liability company, was the actual issuer of the policy.  Assuming *arguendo* that Alabama law applies, any advantage to be gained by having a local court decide the case is "not generally considered a highly significant one."  *Summers-Wood L.P. v. Wolf*, No. 3:08cv60/RV/MD, 2008 WL 2229529, *3 (N.D. Fla. 2008) (citing *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 991 (E.D.N.Y. 1991)).  The Middle District of Louisiana is as capable as this court of considering a simple breach-of-contract case.

**(8)  Weight Accorded to the Plaintiff's Choice of Forum**

The court recognizes that a plaintiff's choice of forum is afforded considerable deference.  *Hale v. Cub Cadet, LLC*, No. 3:10cv697-MEF, 2010 WL 4628185, * 4 (M.D. Ala. 2010).  The weight assigned to a plaintiff's forum choice is significant and "'will not be disturbed unless the other factors weigh substantially in favor of transfer.'"  *Id.* (citing *Mohamed v. Mazda Motor Corp.*, 90 F. Supp.2d 757, 774 (E.D. Tex. 2000)).  As previously

11

discussed, the convenience of the majority of the witnesses and the availability of process to compel unwilling witnesses weighs heavily in favor of transfer.  In this case, the location of the property is not material to resolution of the issues in this case.  Rather, what is at issue is whether the title opinion was imprudently rendered.  Based on the submissions of the parties, it appears that this opinion was formulated in Louisiana by employees who reside there and who are subject to process only there.  The court concludes that this factor coupled with the other factors outweighs the plaintiff's forum choice.

### (9)  Interests of Justice

Finally, this court must consider whether interests of justice weigh in favor of transfer. There is no indication that the plaintiff will be prejudiced by transfer as this case is in its infancy. Furthermore, because three of the principal non-party witnesses who are expected to testify at trial reside in Louisiana, the interests of justice strongly favor transfer of this case to the Middle District of Louisiana.

The court has carefully considered each of the above factors and find that they are mostly neutral or weigh in favor of transfer.  "[I]t is undisputed that courts will not blindly prefer the plaintiff['s] choice of forum over a more convenient location." *Summers-Wood L.P. v. Wolf*, 2008 WL 2229529 (N.D. Fla. May 23, 2008) (citations omitted).  Transferring the case to the Middle District of Louisiana would result in significantly greater convenience for the non-party witnesses and the defendants, while, at the same time, would be slightly less convenient for the plaintiff and its witnesses.  Given the importance of the testimony of

the defendants' non-party witnesses in this case, the court concludes that transfer is appropriate in the interests of justice.  Accordingly, it is

ORDERED that the motion to transfer be and is hereby GRANTED and that this case be and is hereby transferred to the Middle District of Louisiana.

The Clerk of the Court is DIRECTED to take the necessary actions to transfer this case.

Done this 8th day of March, 2011.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE